No. 2696

Second Circuit

KANSAS CITY SOUTHERN RY. v. BAKER GASOLINE CO.

(April 10, 1930. Opinion and Decree.)

Wilkinson, Lewis, Wilkinson & Burford, of Shreveport, attorneys for plaintiff, appellee.

Harry V. Booth, of Shreveport, attorney for defendant, appellant.

ODOM, J. The plaintiff, a common carrier, hauled for and delivered to the defendant company a number of cars in the years 1923 and 1924, on which, it is alleged, defendant is due certain demurrage or storage charges amounting to $766. This suit is to recover that amount. Defendant in answer denied any indebtedness whatever and set up the following defenses:

1. That the cars on which plaintiff claims demurrage or storage charges are leased cars of the Solar Refining Company and subleased to defendant, and that plaintiff has no interest in or control over said cars;

2. That plaintiff at no time, either in writing or verbally, notified defendant of the arrival of said cars on the switch track for the purpose of being unloaded;

3. That plaintiff in making said charges discriminated against it, "in that plaintiff corporation has on various instances remitted charges of this nature to other consignees receiving shipments under similar circumstances."

Counsel in his brief filed in this court concedes that the demurrage or storage charges as shown on plaintiff's itemized statement are correct. But he insists that for the reasons specially urged in the answer, as above noted, defendant owes plaintiff nothing. We dispose of the defenses in the order named.

1. A reading of counsel's brief discloses that he did not stress the defense urged in his answer that plaintiff was not the owner of the cars on which the demurrage was charged, and the point is not mentioned in his assignment of errors. However, we do not think this defense is good.

The "National Car and Demurrage Rules," approved by the Interstate Commerce Commission and filed in evidence provide:

Rule 1, section A: "Cars of either railroad or private ownership, held for or by consignors or consignees for loading, unloading, forwarding directions or for any other purpose (including cars held for loading company material unless the loading is done by the railroad for which the material is intended and on its tracks) are subject to these demurrage rules, except as provided in Section B."

Section B of the same rule reads, in part, as follows:

"The following cars are not subject to these demurrage rules:
"4. (a) Private cars on private tracks when the ownership of the car and track is the same."

In a note under the above-quoted rules, a private car is "a car having other than railroad ownership. A lease of a car is equivalent to ownership."

These were private cars, not being owned or leased by the plaintiff railroad company. They were owned at one time, it seems, by the "Car Trust Company," leased to the Solar Refining Company, and subleased to the defendant company, which, it appears finally acquired ownership of them. If the owner of the cars had owned the track also, no demurrage would be due under the above-quoted rules, but the track was not owned by the owner of the cars. The track was owned by the plaintiff company. It was built under a contract between the plaintiff railway company and the Arkansas Fuel Oil Company, of West Virginia, which contract is dated April 17, 1924, and provides in specific terms that the railway company is to be and remain the owner of it. Under the heading "Ownership," it is stipulated:

"The title and ownership of said sidetrack shall be vested as follows:
"That all rails, switch fixtures, fastenings, etc., and all other material used in the construction of said track which is located on the right of way and lands of the Railway Company, shall during the existence of such agreement and at all times hereafter be the property of the Railway Company, and that the second party shall have no right, title or ownership in such rails or other material with which said track is laid, and the first party may take up and remove the property so owned by it whenever such track is abandoned or taken up. The second party shall not acquire or claim any right of interest in the right of way or lands of the Railway Company occupied by the tracks herein provided for, or used in connection therewith. * * *"

It is therefore perfectly clear that the cars were subject to demurrage charges.

2. Defendant's second ground of complaint is that the plaintiff company gave no notice either verbally or in writing, of the arrival of cars to be unloaded. This defense is not good for two reasons: First, under the National Car Demurrage Rules, under the heading "Notification" (section C, Rule 4), it is provided:

"Delivery of cars upon other-than-public-delivery tracks or upon industrial interchange tracks, or written notice sent or given to consignee or party entitled to receive same, of readiness to so deliver, will constitute notification to consignee."

These cars were not delivered on a public delivery track or an industrial interchange track. The track on which they were delivered was a private industrial track. Under the rules, the mere delivery of the cars upon such track constituted notice to the defendant consignee. Counsel for appellant contends that this track was not an industrial track, and in his assignment of errors ne states: "The court erred in holding the spur track in question an industrial track."

We fully concur with the district judge in his holding that the spur track on which

these cars were delivered is an "industrial track." We do not find in the law books or elsewhere a definition of the term "industrial track," and we are referred to none. An "industrial track," as the term is generally used, is one which is built and maintained to serve some private individual or industry under an agreement between the railroad company and such individual or industry as to rates and special service. In some cases they were used by more than one individual or industry. Unlike what are usually referred to as "public tracks" or "team tracks" or "house tracks," they are not used by the general public. The latter are built and maintained by the railroad company for the use and convenience of its patrons in loading and unloading freight. That this track was intended to be and is an industrial track, as that term is understood by railroad men and the heads of industrial enterprises, is conclusively shown by the contract itself. The contract is written under the heading "Industry Track Agreement." The Arkansas Fuel Oil Company is referred to all through as an "industry," as shown by the following quotation from the preamble, or introduction:

"Whereas, the Industry desires track facilities, hereinafter called sidetrack, for the economical and convenient conduct of the business of the Industry, at or near Cedar Grove. * * *"

The testimony shows that this track was used by industries other than defendant, and it is contended that for that reason it was a "public track." The railroad company, in the contract under which it was built, reserved the right to permit other industries to use the track. It was never used by the public generally, but only by those who had special permits. Such use did not make it a public track.

The cars, having been delivered on a track other than a "public delivery" track or an industrial interchange track, the defendant consignee had notice, as required by the rules filed in evidence, which, admittedly, are binding on both parties.

In the second place, there is nothing in the testimony to show or even suggest that defendant did not have actual notice of the arrival of the cars or that it was prejudiced by the lack of actual notice if it had none. Mr. Rowe, who seems to have been at the head of the defendant corporation, testified that as soon as he received invoices for the cars, he told his employee, Mr. Bloxon, who attended to the unloading of the cars, to be on the lookout for their arrival. Mr. Bloxon testified that he personally went upon and watched the track every day for cars, and further that all cars set out for defendant were prominently and plainly marked. There is nothing to show, and in fact it is not contended, that defendant did not in all cases know of the arrival of the cars immediately after they were placed.

3. The defense—if such it may be called —that plaintiff by charging it demurrage discriminated against it in favor of others, seems to have been abandoned, as it is not mentioned in defendant's brief, and for that reason we shall not discuss it.

Defendant sought to introduce testimony showing that plaintiff did not place the cars on the tracks at places convenient for unloading. Counsel for plaintiff objected to such testimony on the ground that no such defense was set up in the answer and the objection was sustained by the court. Counsel for defendant complains of this ruling. We think it was correct.

For the reasons assigned, it is ordered and decreed that the judgment appealed from be affirmed, with costs in both courts.